Mejia or Mejia? I think it's Mejia. That's what I thought. It's printed wrong on my sheet here. Yeah, Mejia. All right. Mr. Maimon, you have reserved two minutes for rebuttal, so that gives you eight out of the gate. You may proceed. Thank you. Judge Sullivan, Judge Gonzales, Judge Cabranes, may it please the Court. Section 1326d sets forth three gatekeeping requirements that an illegal reentry defendant must meet before he can collaterally challenge a prior removal order. One, exhaustion of administrative remedies. Two, improper deprivation of the opportunity for judicial review. And three, fundamental unfairness. Nearly five years ago in Palomar, Santiago, the Supreme Court confirmed that these requirements are mandatory and that they are not subject to excusal. They are mandatory because they are conjunctive, as in, quote, defendant must meet all three. That's in Palomar, Santiago, at 326. And mandatory because, quote, when Congress uses mandatory language in an administrative exhaustion provision, a court may not excuse a failure to exhaust. That's at the same pin site. The Supreme Court made clear that it said what it meant, and it meant what it said. Palomar, Santiago, argued that administrative review was not, in his words, available because the immigration judge incorrectly advised him about his removability. That did not ultimately affect the Supreme Court's analysis. To the contrary, the Supreme Court said, and here I'll quote, nothing, however, suggests that the substantive complexity of an affirmative defense can alone render further review of the adverse decision unavailable. Administrative review of removal orders exists precisely so noncitizens can challenge the substance of immigration judges' decisions. The immigration judge's error on the merits does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement. So I guess, I mean, prior to the Supreme Court's decision in Palomar, Santiago, what Judge Rossetti did was consistent with Sosa, Calderon, and other cases, right? One hundred percent, Your Honor. And so the question is whether or not this abrogates that authority, and so we'll hear from Ms. Mamagartel in a minute, but, you know, her point is that in Palomar, Santiago, there is that footnote that says we're not passing on certain constitutional or due process arguments, and I guess maybe that's a place to start. So in other words, is that one where the Supreme Court is sort of holding its powder on the very issue that's in front of us, or are they referring to different due process arguments and different constitutional problems? They're referring to different due process arguments and different constitutional problems. In the briefing below, which, by the way, the footnote specifically cites the briefing, so it's not leaving to guesswork what it was talking about. It says, look at Palomar-Santiago's brief at 15, so you know where to look. There was a different argument made, which was that an administrative order can never, can never form the basis for one of the elements of a criminal charge. That was an issue that was also raised in Mendoza-Lopez, and that the Supreme Court itself had a footnote in Mendoza-Lopez that said this issue has been raised, we think it's a tough one, it's troubling in some ways, but we don't have to reach it here. So what happened in Palomar-Santiago is that Palomar-Santiago decided to re-raise this issue, and the Supreme Court said, look, because you re-raised this for the first time at the Supreme Court level, we're not going to pass on it. Instead, we're going to ask, can, and this was their specific question, the question for this Court, and this is from Palomar-Santiago, the question from this Court is whether Palomar-Santiago is excused from making the first two of these showings as the Court of Appeals for the Ninth Circuit held, and the Court holds that the statute does not permit such an exception. That is, Palomar-Santiago said, we aren't getting into this deeper question of whether administrative orders can never be used to create an element. We are going to keep ourselves to whether courts may excuse this exhaustion requirement, as well as the denial of judicial review requirement, and we are going to say that they can't. So Palomar-Santiago on its face clearly abrogates SOSA and the SOSA line of cases, all of which sound in the words of excusal. They don't hold back on it. Excuse me. For example — Sotomayor, does Palomar-Santiago leave any room for excusal? It doesn't leave room for excusal. Now, that doesn't mean that there — that doesn't mean that, per se, a failure can't be addressed because there is the issue of availability, because the statute — and Palomar-Santiago talks about this as well — the statute speaks in terms of available administrative remedies. So, for example, a remedy may not be available if the judge doesn't say you have the right to appeal or tells him you can't appeal. Palomar-Santiago, moreover, says when it comes to issues of availability, look to our recent decision in Ross v. Blake, which was in 2016, that talked about other things, such as — That's an AEDPA case, right? That's a PLRA case. Okay. Prisoner litigation — Prisoner availability, right? So that was the — whether — so, for example, if a prisoner is filing grievances and they're being ripped up by the corrections officer — Precisely. — it never gets to where it's supposed to get. Precisely. Or, presumably, if — and I know that at some point there was a case in the Ninth Circuit that mentioned this possibility — if you have a statutory administrative remedy that exists on the books, but it's created in such a way that it's logically impossible to actually get through it. So if you have a judge who tells you you're not allowed to appeal, or if you have, as you said, the BIA says, you know, something, we're not even going to hear these appeals at all, if there's a problem with then appealing that, that goes to the improper denial of judicial review after the BIA if they say you're not going to be able to get to the courts. You have the interesting question that came up in Copeland, where if you pursue a non-BIA route that is a non-direct appeal route, that there is no judicial remedy available after it, what does that do? And that's not a question that's before the Court here. But, again, so that means that a defendant isn't without any remedy under any circumstances. It simply means that, as Congress said, we understand that there has to be an available judicial remedy for this to be constitutionally sound. And Congress said, great, we're going to say as long as there was an available judicial remedy, and you either took it or chose not to take it, that is your decision at the time. And here, three separate times on the record, the immigration judge advised Mejia that he had the right to appeal. Before he started, when he went through all of Mejia's rights, he talked about the right to appeal. Breyer. Yeah. There's no question about that. I mean, you know, the point is that the judge gave bad advice, but not even bad advice. It was the state of the law at the time as to whether or not that appeal was likely to be a winner. But you're saying that shouldn't matter. That's right. And, in fact, it would be an odd world indeed. First of all, any time that somebody is going to appeal, it means that they think that the judge got it wrong. So it would be very odd to say that the exhaustion requirement is excused or otherwise satisfied or that administrative remedies aren't available because the judge got it wrong. Because every single time you appeal, the idea is because the judge got something wrong. And it certainly can't be that what it all depends on is whether the judge is firm enough in what he says. That is, if the judge says you absolutely aren't entitled to this relief versus I don't think you're entitled to this relief, there's nothing in the law that says that one of those is suddenly cognizable and that the other one is not. Rather, the answer is exactly as Justice Sotomayor explained in Palomar-Santiago, the whole point of the appeal process is if the judge gets it wrong, that's why you appeal. And you have this incentive to appeal if you think that your order of removal shouldn't be there. And that simply didn't exist here. So because Judge Presetti, who, again, I think that you were absolutely right, Judge Sullivan, he was following the pre-Palomar-Santiago dictates of this court, we're not faulting him for that in any way, but because he followed that rather than Palomar-Santiago, which abrogated these dictates and said you're not allowed to excuse the exhaustion requirement, you're not allowed to excuse D-2, the denial of judicial review requirement, he erred in dismissing the indictment. Well, I mean, he basically said that, you know, unless and until the Second Circuit says that Sosa and Calderon and Copeland are overruled, then I know what my marching orders are. And so I guess that's the question. Do we need to do something or can we just issue a panel opinion here? I think you can do either. You could issue a panel opinion here because this is clearly abrogated by the Supreme Court, and again, there's simply no way to reconcile the words in Sosa and Copeland and Calderon, as well as the words used by district judges such as Judge Rossetti afterwards, that this is an excusal mechanism with Palomar-Santiago saying you aren't allowed to create an excusal mechanism for 1326D. Because that is clearly contradicted, I think this Court can find that it has been abrogated by the Supreme Court rather than needing to go en banc in order to determine whether it erred in the first place in Sosa at all. Unless the Court has any other questions. No. Well, you reserved a couple of minutes for a couple, so we'll now hear from Ms. Baumgartel. I understand I'm confused looking at both of you on different sides of the room than I'm used to seeing, but that's good. It freshens things up. And I did not know where to sit when I came in. Neither did Judge Gonzales. May it please the Court. Sarah Baumgartel, the Federal Defenders, on behalf of Mr. Mejia. This Court's precedents have not been abrogated by Palomar-Santiago. And I think that you'll notice my friend did not at once mention Mendoza-Lopez, which is the earlier Supreme Court due process precedent on which this Court's decisions in Sosa, Calderon, and several others are based. And so Palomar-Santiago was a narrow Ninth Circuit, a narrow decision about a specific Ninth Circuit rule that essentially said that the first two provisions of 1326D are excused if there is a substantive error. So if the IJ got it wrong on the substance, they said that you were removable for offense that was not removable, then you didn't have to satisfy the other provisions. There's no question that Palomar-Santiago in the Ninth Circuit and in the Supreme Court was not on all fours with this in terms of what the error or the mistake was. But the Ninth Circuit got a chance to sort of revisit the impact of Palomar-Santiago on facts very much like this one in Portillo. And I guess obviously we're not bound by what they have to say, but they seem to suggest that the Supreme Court decision did aggregate that line of cases that are consistent with Sosa, Calderon, and Coppola. Yeah, and I think the Ninth Circuit was wrong before and they're wrong now. I think that Your Honor should stick with the Second Circuit precedents. You know, the Fourth Circuit and the Ninth Circuit post-Palomar-Santiago have some language recognizing that there could be procedural due process errors in an immigration hearing that would essentially, whether you want to term it in terms of making further review unavailable or something else. But the point is that this Court's precedents, which again, until they're clearly abrogated, which they have not been, a panel of this Court is bound to follow, this Court's precedents are on all fours with Mendoza-Lopez. And so what they say is that essentially if there is a procedural due process violation in your immigration hearing that effectively renders appeal unavailable. And so, you know, my friend focuses on the word availability and he asks this Court to look to the PLRA, but there's a better way to interpret it, which is that was literally the word used in Mendoza-Lopez to describe the error there. And that was the same error. So in that case, the IJ failed to inform the noncitizens there about a discretionary means of relief from removal. In that case, it was suspension of deportation. And what the Supreme Court majority opinion said was that that rendered further review effectively unavailable. And that was a procedural due process violation that meant that that deportation order could not be the basis of a new illegal reentry charge. In that case itself, as Justice Rehnquist's dissent points out, the IJ had literally told the noncitizens that they could appeal. So what my friend is essentially asking you to do is adopt the dissent in Mendoza-Lopez as the standard. Aren't you asking Mendoza-Lopez to do a lot of work here? I mean, isn't it – when it boils down to, isn't Mendoza-Lopez saying you need an opportunity for judicial review somewhere along the process? It's either you get it during the immigration process or you get it during the criminal prosecution. I mean, what more is Mendoza-Lopez saying that survives after the statutory addition? Well, it's saying a little bit more than that. It's saying you need a meaningful opportunity for review. And what it found there is because you didn't make a note, the noncitizens didn't have a knowing and intelligent waiver of appellate review, they were not given a meaningful opportunity for review. And, again, this is common ground with the government. The government admits that there could be some situation where essentially even if you're told that appellate review is available, there may be something that happens at the hearing that does somehow render it unavailable. And so that's common ground. The question is just what might those things be. And the government wants the rule to be that if the IJ affirmatively misleads you about the availability of discretionary relief, that can't be enough. But Mendoza-Lopez says that that is enough to render it unavailable. And that's, again, what happened in Sosa and Calderon and other precedents from this Court. So the difference between this rule and Palomar-Santiago is that the Ninth Circuit rule was a purely substantive error. And so they essentially said whenever the IJ just gets the substance wrong, you are excused from these other requirements. But Mendoza-Lopez in this Court's precedents. That's not how the Ninth Circuit wrote it in 14 of the exaltments, right? I understand, but that's the way the question presented came to the Supreme Court. And, in fact, if you want to look at the Palomar-Santiago briefing from the government, which we cite in our own brief on appeal here, the government there specifically distinguished that rule from a situation where the noncitizen is not informed of discretionary relief from removal. And so in framing the question presented in Palomar-Santiago, the government itself made a real effort to distinguish Mendoza-Lopez and to narrow the question. And so that was the narrow question that the Supreme Court was answering. And it's notable, of course. I mean, that's an opinion authored by Justice Sotomayor, who was undoubtedly familiar with this Court's precedents. And she did not include the Second Circuit in her list of courts that follow this rule. So from her perspective, it didn't seem like she thought the Second Circuit had the same rule as the Ninth Circuit. And, in fact, it didn't. It had— I'm sorry to interrupt if you want to finish that thought. Go ahead. I was going to ask you about the footnote in Palomar-Santiago and the fact that the due process arguments and separation of powers arguments referenced in that footnote are very distinct, right? So, I mean, you're urging us to read due process very broadly to say any due process argument is not covered by this opinion. Well, that's right, because the opinion is necessarily limited by the question presented. And so the government here essentially has an affirmative obligation to show that this Court's precedents have been abrogated. And so you need a clear Supreme Court ruling that is on point. And so when you have a Supreme Court ruling that didn't consider any constitutional question, you know, it specifically notes these, whatever— I mean, I think the litigant there did not do a good job of raising any constitutional issue. But the point is the Supreme Court itself in Palomar-Santiago didn't consider any constitutional question. And so with that background, you cannot say the decision clearly abrogates this Court's constitutional precedents. Well, that may be, but I just thought you maybe read too many— you put, especially in your 28-J letter, were putting a lot of stock on this footnote 4. And it seems to me the footnote 4 really is pretty much focused on the arguments that were raised in that— in Palomar-Santiago that have to do with separation of powers and with administrative proceedings being sort of suspect. I think the point is Palomar-Santiago doesn't address any constitutional arguments, period. And so if it doesn't, then it can't possibly have abrogated Mendoza-Lopez, which it cites, or this Court's other constitutional due process decisions in Sosa and Calderon. The—I also, just to address the government's point, fundamentally, this issue arises in an incredibly small, narrow class of cases to start with. It only comes up in a situation where a court has determined that the deportation was fundamentally unfair. And so the very limited question here is when a deportation order that everyone agrees or that the court has found is fundamentally unfair can be the basis for a new criminal charge. And so it is already a narrow class of cases. Palomar-Santiago invalidated the Ninth Circuit rule that was totally unlike— To the extent that the government believes that essentially the theory or the vibes of Palomar-Santiago is such that this Court's precedents have been abrogated, that would have to be an en banc request because it's— But I mean, the fundamental unfairness, I mean, it seems to me it's sort of kind of like if I'm at a, you know, a sentencing in a criminal case and I were to say, you have a right to appeal, though it seems to me you may have waived that right in your plea agreement, but you have a right to appeal. I mean, that—my sort of editorial comment on whether the plea agreement effectively waived the right or foreclosed the ability to appeal would be fatal. No. So I think—and actually, United States v. Johnson is helpful on this. And so obviously this Court has experience with determining when an appellate waiver is knowing and intelligent. And in the Court's cases, I think you see that critical distinction. So in a case like Sosa or Calderon and a case like this one, the district judge correctly finds that it wasn't a knowing and intelligent waiver. In a case like, for example, United States v. Johnson, even though there was a lot of back and forth and even though there was a substantive error by the I.J. on deportability, this Court nonetheless concluded under the totality of the circumstances that it was a knowing and intelligent waiver, and so therefore that the individual there could not challenge the underlying deportation order. And so this Court has always engaged in a very careful, fact-specific analysis of these cases that's tied to the Mendoza-Lopez due process rule. And there's no reason to revisit that law because it certainly has not been abrogated by Palomar-Santiago. All right. Are you finished with them? I'm six seconds. If there are other questions, simply we'll take them. It's an interesting and important question. All right. Mr. Maiman, you've got two minutes for a rebuttal. Thank you. First of all, Ms. Baumgartel brought up Mendoza-Lopez a number of times, and obviously I actually did mention it. But beyond that, A, Mendoza-Lopez was, of course, pre-1326d and was pre-Palomar-Santiago. It is incorporated into Palomar-Santiago. But are you saying that Palomar-Santiago, you know, sub silentio overruled Mendoza-Lopez? No, I'm not. What I'm saying is that Mendoza-Lopez, though, was decided at a time that 1326 didn't have a collateral challenge provision in it. And what Mendoza-Lopez was deciding was in the absence of that challenge, what can we do to make this, that challenge provision, what can we do to make this okay? And Congress then reacted by saying, okay, we are going to create such provision that will outline the steps that you have to have in order to demonstrate that you, that judicial review was available to you and either you took advantage of it or you were unable to take advantage of it for some reason. Moreover, with Mendoza-Lopez, because it is not actually accurate that Mendoza-Lopez relied entirely on the idea that the immigration judge there had failed to advise the defendants of their right to seek certain discretionary relief because that was only part of it. And this is from Mendoza-Lopez at 839 to 840. The United States did not seek this court's review of the determination of the courts below that Respondent's right to due process were violated by the failure of the immigration judge to explain adequately their right to suspension of deportation or their right to appeal. And in fact, this dissent by Justice Rehnquist that has been cited as, well, this must be what happened, putting aside that there's nothing in the record to show what actually happened there, this is just what's in dissent, Justice Rehnquist said, by the way, I think the immigration judge asked them if they wanted to appeal. He did that in complaining, saying one of the problems that I have with the main opinion is the main opinion is accepting these findings without looking at the facts to determine whether or not they actually interfered with their right to appeal. Rather, they're taking these findings wholesale because in that paragraph that I just mentioned, the Supreme Court says, fine, we will just presume everything that has been conceded and move forward on that basis. And Justice Rehnquist says the — that they didn't at all address the question whether Respondents knowingly waived their rights to appeal below. And so he says, that's why I want to bring up these facts, because I think it's important that the world know that this is made without reference to what actually happened below. You know, one thing that comes up here, and I think that Judge Sullivan certainly moved toward this, and I think that it's an important analogy, is this idea that the judge has to tell you what your remedy would be and what your rights would be and what it is that you would or would not win on, on appeal, is the only thing that makes the appeal waiver valid, is easily analogized, I think, to the criminal context where, let's say, for example, a judge denies a suppression motion, and a judge pleads guilty and he's given the usual colloquy of, you understand, you're waiving your right to appeal by doing this, he doesn't then get to pull back his plea or say, well, I should be able to appeal nonetheless on the basis of, but the judge misinformed me. The judge told me my suppression motion had no merit, and it certainly also can't be that the only difference is if the judge says to you, look, it's a really close call and you might want to appeal this, or if the judge issues a section 1292B order asking for clarification on a certain area of law. That isn't it. Rather, it's exactly what Justice Sotomayor said in Palomar-Santiago. The whole point of the appeal process is we think the judge got it wrong, and this is our chance to vindicate our rights as against the judge on appeal. Also, it's not accurate that Palomar-Santiago didn't address constitutional questions at all. It did because it said, well, there's this question of whether constitutional questions bring up the question of whether we should allow excusal under a concept of constitutional avoidance. And they said no. They said 1326d is not subject to constitutional avoidance. And so they addressed it, and they addressed it absolutely clearly. Finally, I think that it's just worth noting that you heard that this affects a very narrow class of cases. I don't think that that's entirely accurate. As the Court knows, because it's seen these cases over and over, under the evolving concept of the categorical approach, more and more predicate crimes have been deemed long after the fact, as Judge Sullivan pointed out, this is something that the immigration judges wouldn't have known at the time, but have been deemed long after the fact not to be crimes of violence, not to be narcotics offenses that, therefore, no longer qualify as aggravated felonies. So as a result, this actually permeates, I'd say, a large number, if not the vast majority, of potential illegal reentry cases where you have the question of when somebody was deported 15, 20 years ago on the basis of a cocaine sale conviction or on the basis of a reckless abuse of their child conviction, and at that time everybody understood that this qualified as an aggravated felony, and the person chose not to appeal his decision, do they get a second shot now? And that happens all the time. So I don't think that it's a terribly narrow class of cases at all. With that, unless the Court has any questions, we'll rest on our briefs.  Well, thank you both. Very well argued. Interesting case. This is to the high points. It's always nice to have arguments like this with good lawyers on an interesting case. You don't always get that combination. So thank you all. We'll reserve.